IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| A.K. NGAI, INC., | ) CIVIL 15-00356 LEK-KSC |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| XU YONG'AN aka MR. HSU, a citizen of and an individual residing in the People's Republic of China, et. al., | ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION**

Before the Court is Defendant HGHK International Co., Ltd.'s ("Defendant" or "HGHK") Motion to Dismiss and Compel Arbitration ("Motion"), filed on December 24, 2015. [Dkt. no. 13.] A.K. Ngai, Inc. ("Plaintiff" or "Ngai") filed a memorandum in opposition on January 26, 2016, and Defendant filed its reply on February 2, 2016. [Dkt. nos. 19, 21.] This matter came on for hearing on February 16, 2016. On February 19, 2016, and with leave of the Court, Ngai filed a Supplemental Memorandum in Opposition to [13] Defendants' Motion to Dismiss and Compel Arbitration Filed December 24, 2015 ("Ngai Supplemental Memorandum"), and on February 23, 2016, HGHK filed a Supplemental Reply in Further Support of Motion to Dismiss and Compel Arbitration, Filed December 24, 2016 [Dkt. 13] ("HGHK Supplemental Memorandum"). [Dkt. nos. 23, 26.] After careful

consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, HGHK's Motion is HEREBY GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

On November 17, 2015, Ngai filed an Amended Complaint for Damages, Declaratory and Injunctive Relief ("Complaint") against Yong'an Xu ("Mr. Xu"), Vivian Hsu ("Mrs. Hsu"), Weiqun Du ("Du"), Kathy Fan ("Fan"), the Hengdian Group ("Hengdian"), HGHK, and HGDA Corp.[1] [Dkt. no. 9.] Ngai is a general building contractor that employs Anthony K. Ngai ("A. Ngai"). [Id. at ¶ 1.] Only HGHK has been properly served in the instant matter.[2] See dkt. no. 15 (Summons executed by HGHK).[3]

The instant dispute is over a property located on

---

[1] The Court notes that there appears to be some dispute over the spelling of certain defendants names, see Mem. in Opp. at 2 n.3 ("Plaintiff refers to Mr. and Mrs. Xu as the Hsus because Bill Du confirmed the English spelling of Xu as Hsu."), but no party has requested that the Court make any changes to the case caption. The Court will therefore refer to parties consistent with the case caption.

[2] The Court notes that, on March 11, 2016, Ngai filed a Motion for Alternative Service ("Service Motion") requesting that the Court authorize Ngai to effect service on Mr. Xu, Mrs. Hsu, Du, Fan, and Hengdian through HGHK's counsel of record. [Dkt. no. 27.]

[3] The Court record shows unexecuted Summonses for Mr. Xu and Mrs. Hsu, see dkt. nos. 16-17, but there is no indication that service was attempted on the other named parties.

Hawai`i Loa Ridge in Honolulu, Hawai`i ("the Property").[4] [Complaint at ¶ 2.] HGHK is the fee owner of the Property. [Motion, Declaration of Weiqun Du ("Du Decl."), Exh. 3 (Warranty Deed conveying the Property to HGHK).] Mr. Xu is President and Chief Operating Officer ("COO") of Hengdian, which is the sole owner of HGHK. [Id. at ¶¶ 7, 11.] Mrs. Hsu is the COO of the "import and export arm" of Hengdian, Zhejiang Hengdian Import and Export Co., Ltd. [Id. at ¶ 10.] Du is the COO of HGHK. [Id. at ¶ 1.] A. Ngai alleges that he worked with Mr. Xu and Mrs. Hsu to design the house, and that he made two trips to China to meet with them about the design. [Id. at ¶¶ 38-41.] Ngai and Du signed two contracts: one related to the architectural design of the home, and the other related to the construction of the home. See Du Decl., Exh. 1 (American Institute of Architects ("AIA") Document B102 – 2007) ("Architect Agreement"), Exh. 2 (AIA Document A101 – 2007) ("Contractor Agreement," collectively "the Agreements"); see also Complaint at ¶¶ 34, 49. Ngai alleges that its relationship with Mr. Xu and Mrs. Hsu began to unravel towards the end of construction on the Property, and that it has not received payment since May 2012. [Complaint at ¶¶ 56, 66-67.] Further, Ngai states that it "received a letter from counsel for the Hsus, alleging defective design and construction

---

[4] The Property is recorded at the State of Hawai`i, Bureau of Conveyances as Tax Map Key No. (1) 3-7-016-030. [Complaint at ¶ 2.]

3

of the Hsu Residence" in August 2013.  [Id. at ¶ 73.] Thereafter, another architect and contractor, David Knox, inspected and performed "fixes" at the Property before Ngai had a chance to respond to any report of defects or fix them itself. [Id. at ¶¶ 74-79.]  According to Ngai, this is a violation of the Agreements, and is also a misappropriation of Ngai's "copyrighted Hsu Residence Building Permit Set and certain other Ngai copyright protected design(s), plan(s) and specification(s)." [Id. at ¶ 81.]

Ngai states that HGHK demanded arbitration in November 2013.[5]  [Id. at ¶ 78.]  Ngai also states, however, that "[t]he Hsus agreed to participate in mediation" prior to any arbitration.  [Id. at ¶ 84.]  On August 29, 2015, HGHK filed a second demand for arbitration.  [Id. at ¶ 85.]

The Complaint seeks declaratory relief against Mr. Xu, Mrs. Hsu, and Du that:  they are in privity of contract with Plaintiff; they must participate in any dispute resolution; because they have sought arbitration through a shell company, they have waived their right to arbitration; "Ngai's third-party subcontractors are not a party to the" the Agreements and are "not bound by an arbitration provision"; and the Architect Agreement bars claims and causes of actions arising one year

---

[5] Ngai asserts that "[t]he Hsus also demanded arbitration, not as themselves, but through their shell company, HGHK, alleging construction defects."  [Id. at ¶ 78.]

after substantial completion of the Property, which occurred on March 31, 2012 ("Count I").  [Id. at ¶¶ 87-90.]  In addition, the Complaint states claims for:  breach of written contract ("Count II"); [id. at ¶¶ 91-106;] breach of oral contract ("Count III"); [id. at ¶¶ 107-10;] fraud, misrepresentation and/or deceit ("Count IV"); [id. at ¶¶ 111-30;] quasi-contract – quantum meruit ("Count V"); [id. at ¶¶ 131-36;] copyright infringement ("Count VI"); [id. at ¶¶ 137-58;] intentional interference with contractual relations ("Count VII"); [id. at ¶¶ 159-64;] negligent interference with contractual relations ("Count VIII"); [id. at ¶¶ 165-67;] intentional interference with prospective economic advantage ("Count IX"); [id. at ¶¶ 168-71;] negligent interference with prospective economic advantage ("Count X"); [id. at ¶¶ 172-75;] defamation ("Count XI"); [id. at ¶¶ 176-79;] breach of the implied covenant of good faith and fair dealing ("Count XII"); [id. at ¶¶ 180-83;] and alternatively, alter ego/pierce the corporate veil ("Count XIII") [id. at ¶¶ 184-89]. The Complaint seeks:  declaratory judgment on Count I; compensatory and consequential damages on Counts II and III; exemplary and punitive damages on Count IV; a preliminary and permanent injunction, monetary judgment, and award of attorneys' fees and costs on Count VI; exemplary and punitive damages on Counts IV, VII, IX, and XI; compensatory and consequential damages "[o]n all applicable Counts"; damages on all counts that

will "fairly and adequately compensate Plaintiff for all of its injuries, losses, and damages"; pre- and post-judgment interest; costs, expenses, and attorneys' fees; and "other and further relief as the Court may deem proper."  [Id., Prayer for Relief ¶¶ A-L.]

HGHK argues that the Property was always intended for its use, and was never designed to be a private residence for Mr. Xu and Mrs. Hsu.  [Mem. in Supp. of Motion at 5.]  Moreover, HGHK claims that the Agreements include broad arbitration clauses, and that the Court should order Ngai to arbitrate all of its claims and dismiss the Complaint.  [Motion at 2.]

### **STANDARD**

This district court recently stated that:

> In determining whether to compel arbitration, a district court may not review the merits of the dispute; rather, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.  If the answer is yes to both questions, the court must enforce the agreement." Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (citing Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)); see also Momot v. Mastro, 652 F.3d 982, 986 (9th Cir. 2011) ("Because arbitration is fundamentally a matter of contract, the central or primary purpose of the [Federal Arbitration Act ("FAA")] is to ensure that private agreements to arbitrate are enforced according to their terms.") (citations omitted).
>
> The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that written arbitration agreements "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2; see also Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1126 (9th Cir. 2013) ("With limited exceptions, the [FAA] governs the enforceability of arbitration agreements in contracts involving interstate commerce."). Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Generally, "the federal policy in favor of arbitration does not extend to deciding questions of arbitrability," that is, the question "who decides whether a claim is arbitrable." Oracle Am., Inc. v. Myriad Group A.G., 724 F.3d 1069, 1072 (9th Cir. 2013) (emphasis omitted). "[G]ateway questions of arbitrability, such as whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy," are issues for the court and not the arbitrator to decide. Momot, 652 F.3d at 987 (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-85 (2002)). But parties may agree to arbitrate the question of arbitrability. Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter. Significantly, as discussed more fully below, binding Circuit precedent requires courts to allow the arbitrator to determine arbitrability where an agreement to arbitrate incorporates the rules of the American Arbitration Association.[6]

---

[6] The district court explained further that, "the Ninth Circuit recently held in Brennan that incorporation of the [American Arbitration Association ("AAA")] rules in an at-will employment contract constitutes 'clear and unmistakable' evidence
(continued...)

7

Pelayo v. Platinum Limousine Servs., Inc., CIVIL NO. 15-00023 DKW-BMK, 2015 WL 9581801, at *11-12 (D. Hawai`i Dec. 30, 2015) (some alterations in Pelayo).

**DISCUSSION**

**I.   The Agreements and the AAA Rules**

The Architect Agreement was signed by Du and A. Ngai on January 18, 2010.  Section 4.1.1 of the Architect Agreement states, in pertinent part, "[t]he Owner and Architect shall commence all claims and causes of action, whether in contract, tort, or otherwise, against the other arising out of or related to this Agreement in accordance with the requirements of the method of binding dispute resolution selected in this Agreement." The Architect Agreement also requires that "[a]ny claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to binding dispute resolution."  [Architect Agreement at § 4.2.1.]  However, "[i]f the parties do not resolve a dispute through mediation pursuant to this Section 4.2," the Architect Agreement stipulates that arbitration shall be the "method of binding dispute resolution."  [Id. at § 4.2.4.]  Section 4.3.1, the arbitration clause of the Architect Agreement, explains that:

---

⁶(...continued)
that the parties intended to delegate the arbitrability question to an arbitrator."  Pelayo, 2015 WL 9581801, at *13 (quoting Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015)).

> If the parties have selected arbitration as the method for binding dispute resolution in this Agreement, any claim, dispute or other matter in question arising out of or related to this Agreement subject to, but not resolved by, mediation shall be subject to arbitration, which unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of this Agreement.  A demand for arbitration shall be made in writing, delivered to the other party to this Agreement, and filed with the person or entity administering the arbitration.

Finally, § 7.1 states that "[t]his agreement shall be governed by the law of the place where the Project is located, except that if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 4.3."

A. Ngai and Du signed the Contractor Agreement on May 28, 2010.  Section 6.1 of the agreement states that "[t]he Architect will serve as Initial Decision maker pursuant to Section 15.2 of AIA document A201-2007,[7] unless the parties mutually agree in writing to appoint below another individual." The parties did not do so.  Further, like the Architect Agreement, § 6.2 of the Contractor Agreement states that arbitration, "pursuant to Section 15.4 of the AIA Document A201-

---

[7] Section 15.2.1 of AIA document A201-2007 states, in pertinent part, "[t]he Architect shall serve as the Initial Decision Maker, unless otherwise indicated in the Agreement." [Motion, Du Decl., Exh. 6 (AIA Document A201 - 2007) ("Doc. A201").]

9

2007," shall be the method of binding dispute resolution for those claims not resolved through mediation.  Section 15.4 of Document A201 explains that,

> [i]f parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement.  A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration.  The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

Like the Architect Agreement, § 13.1 of Document A201 states that "[t]he Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4."

Both the Architect Agreement and the Contractor Agreement are therefore governed by the FAA, and both incorporate the AAA rules.

## II.  **The Transfer to DPR**

While HGHK contends that "the Arbitration Clauses incorporate AAA's rules," [Reply at 5,]  Ngai argues that "the parties unambiguously agreed to transfer jurisdiction from AAA to [Dispute Prevention & Resolution, Inc. ("DPR")] in December 2013,

10

and have since mutually acted under the terms of that agreement by agreeing to mediate under DPR Mediation Rules, and proceeding for the last six months under the DPR Arbitration Rules" [Ngai Suppl. Mem. at 4].  Ngai's assertions are incorrect.

The procedural history of the alternative dispute resolution in this case is as follows.  Pursuant to the Agreements, HGHK filed a Demand for Arbitration with AAA. [Motion, Declaration of Sarah M. Love ("Love Decl."), Exh. 13 (HGHK Demand for Arbitration, dated 10/31/13) ("Demand").]  On December 19, 2013, the parties agreed that the Demand would be "forthwith transferred to the jurisdiction of" DPR.  [Id., Exh. 14 ("Stipulation to Transfer Action to Dispute Prevention & Resolution") ("Stipulation")].  The Stipulation did not mention the rules that would apply to the arbitration, and it noted that "[t]he parties do not waive and specifically reserve any and all claims and defenses."  [Id.]  Before proceeding to arbitration, and pursuant to the Agreements, the parties engaged in mediation with DPR and used the DPR Mediation Rules.  See Ngai Suppl. Mem., Exh. 2 (email from DPR Case Manager Coleen Tasaka to the parties' counsel, dated 4/2/14, explaining how mediation will proceed, including the use of the DPR Mediation Rules).  Believing that mediation had reached an impasse, "HGHK filed its Statement of Claims to advance arbitration."  See Reply at 2; see also Ngai Suppl. Mem., Exh. 4 at 2-3 (email from DPR Case Manager

Kelly Bryant to parties' counsel, dated 9/2/15, indicating that HGHK's counsel, Harvey Lung, Esq., sent a letter on August 28, 2015 with suggested arbitrators).  On September 8, 2015, DPR placed the arbitration in abeyance "pending further direction from the court."  See Ngai Suppl. Mem., Exh. 4 at 1 (email from Kelly Bryant, dated 9/9/15, informing the parties' counsel that the arbitration would be put in abeyance) ("9/9/15 Email").

       This district court previously considered whether DPR rules apply to an arbitration that, per the relevant agreement, was to be conducted by AAA according to AAA rules.  In Hawaiian Telcom Communications, Inc. v. Tata America International Corp., Civil No. 10-00112 HG-LEK, 2010 WL 2594482 (D. Hawai`i, May 24, 2010),[8] the Court observed that

> [t]he Arbitration Clause states that any dispute:
>
>> shall be finally settled by binding arbitration in accordance [with the] rules and procedure for commercial arbitration of the American Arbitration Association (AAA) at the office of the AAA located in Honolulu, Hawaii (or such other arbitration organization located in Honolulu on which the parties may mutually agree) and with Hawaii Revised Statutes § 658A.
>
> As to the issue of the applicable rules and procedure, this arguable could mean one of two things.  First, it could mean that the parties agree to use the AAA Commercial Rules AND to hold

---

[8] The Findings and Recommendation of the magistrate judge was adopted by Hawaiian Telcom Communications, Inc. v. Tata America International Corp., Civil No. 10-00112 HG-LEK, 2010 WL 2594495 (D. Hawai`i June 24, 2010).

12

> the arbitration at AAA's office in Honolulu or in any other arbitration organization's office located in Honolulu upon which the parties mutually agree. In other words, the parties can agree to hold the arbitration in a Honolulu location other than AAA's office, but they must use the AAA Commercial Rules. Second, it could mean that the parties agree to use the AAA Commercial Rules in AAA's Honolulu office OR, if they mutually agree to another arbitration organization located in Honolulu, then they will use that organization's rules and procedure in addition to its office. This Court must determine whether these two possible interpretations render the Arbitration Clause ambiguous.

Hawaiian Telcom, 2010 WL 2594482, at *8 (emphasis in original). Under Hawai`i law, "[a] contract is ambiguous when its terms are reasonably susceptible to more than one meaning. As a general rule, the court will look no further than the four corners of the contract to determine whether ambiguity exists." Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawai`i 36, 45, 305 P.3d 452, 461 (2013) (citations omitted). The Court in Hawaiian Telcom concluded:

> In this Court's view, one must strain the wording of the Arbitration Clause to apply the second possible interpretation. The Arbitration Clause is not reasonably subject to the second possible interpretation when read in the context of the entire Master Services Agreement. A plain reading of the section supports the first possible interpretation. This Court therefore finds that the Arbitration Clause requires that the parties' arbitrations must be conducted pursuant to the AAA Commercial Rules, regardless of which arbitration organization conducts the arbitration. To change the applicable rules would require an amendment of the Master Services Agreement and a waiver of the use of the AAA Commercial Rules. Under § 16.12, such action requires a written agreement signed by

13

>           the parties' authorized representatives.
> Mr. Portnoy and Mr. Holman reached the agreement
> to use DPR's office in a series of correspondence,
> and they did not reduce the agreement to as signed
> writing.  The agreement therefore did not
> effectuate a waiver of the use of the AAA
> Commercial Rules in favor of the use of DPR's
> rules.  Thus, the Court FINDS that DPR must
> administer the parties' arbitration pursuant to
> the AAA Commercial Rules.

Hawaiian Telcom, 2010 WL 2594482, at *9 (emphasis in original).

Here, like in Hawaiian Telcom, the terms of the Agreements are unambiguous.  Section 4.3.1 of the Architecture Agreement states that any arbitration will be governed by the AAA Construction Industry Arbitration Rules, and § 15.4 of Document A201, which applies to the Contractor Agreement, says the same.  The Stipulation transferred jurisdiction over the Agreements from AAA to DPR.  It did not in any way mention "a waiver of the use of the AAA" rules.  See id.  Moreover, the Agreements state that they "may be amended only by written instrument signed by both Owner and Architect."  See Architect Agreement at § 9.1; Contractor Agreement at § 9.1.  Ngai's argument that the Stipulation, as well as the use of DPR rules in mediation, prove that the parties agreed to use DPR Arbitration Rules is therefore not supported by the record.  Further, Ngai's assertion that the parties have been proceeding the "last six months under the DPR Arbitration Rules," [Ngai Suppl. Mem. at 4,] is, at best, misleading, considering that Ngai's own exhibits show that the arbitration has been held in abeyance since September 2015.  See

9/9/15 Email; see also Mem. in Opp. at 22 ("Recognizing the Court's sole province in making arbitrability determinations, DPR has refrained from proceeding with that arbitration until arbitrability issues are resolved."). The Court CONCLUDES that the parties must use AAA rules in any arbitration conducted pursuant to the Agreements.

### III. **The Proper Parties to the Arbitration**

The Agreements both contain valid, broad, arbitration clauses that encompass the claims in the Complaint, and the Agreements must be enforced.[9] See Pelayo, 2015 WL 9581801, at *12 (citations omitted). HGHK, the only party on which service has been effected, brought this Motion on its own behalf.[10] Ngai

---

[9] HGHK contends that all claims are subject to arbitration. See Mem. in Supp. of Motion at 19-25. Ngai argues that "even if Defendants did not waive their rights to arbitration, and even if all of the Defendants were deemed subject to arbitration, certain claims would remain subject to judicial decision, namely the Copyright Infringement claims." See Mem. in Opp. at 35. Ngai, thus, argues that, absent any of its other arguments, only Count VI is not encompassed by the arbitration clauses in the Agreements. The Court addresses the issue of Count VI *infra*.

[10] Both the "of counsel" section of the Motion and the title itself use the word "Defendants." See Motion at 1. On February 2, 2016, HGHK's counsel filed an Errata to Defendants' [*sic*] Motion to Dismiss and Compel Arbitration [Dkt. 13], Filed 12/24/15 ("Errata"). [Dkt. no. 20.] The Errata explains that HGHK's counsel only had authority to accept service of process of the First Amended Complaint for HGHK, and that use of "Defendants" "was a clerical error." [Errata at 2-3.] The Court therefore rejects Ngai's argument that, "[b]y demanding dismissal of this action in order to pursue arbitration, all Defendants should be deemed to have conceded to the existence of an enforceable contract containing an agreement to arbitrate."
(continued...)

15

argues that "[b]efore the parties can proceed to try their dispute in arbitration or otherwise, this Court must make a determination of the arbitrability of claims, namely which Defendants are parties to the Architect and Construction Contracts and the arbitration clauses Defendants cite in their Motion."[11] [Mem. in Opp. at 21.] This Court has determined, however, that the Agreements incorporate AAA rules, and therefore the Court CONCLUDES that the arbitrator must determine issues of arbitrability, including the proper parties to the arbitration.[12]

---

[10](...continued)
[Mem. in Opp. at 5.]

[11] Ngai argues that it "cannot be forced into arbitration with HGHK, who it has no agreement with at all, let alone forced into arbitration with HGHK alone, while being barred from suing other Defendants." [Mem. in Opp. at 4.] Although not necessary to the instant Order, the Court notes that HGHK is likely an undisclosed principal. Du signed both the Architect Agreement and the Contractor Agreement. Further, "[c]ourts have held that nonsignatories to arbitration agreements may be bound by the agreement under ordinary contract and agency principles." Britton v. Co-op Banking Group, 4 F.3d 742, 745 (9th Cir. 1993). While Ngai argues that "Bill Du never, at any time, told Ngai that he was signing any of the Contracts as a representative of HGHK," [Mem. in Opp. at 18,] it is undisputed that Du is the COO of HGHK [Du Decl. at ¶ 1]. Even if Ngai did not know that Du was the COO of HGHK, under Hawai`i law, "the undisclosed principal may sue." Smith v. Lilienthal, 40 Haw. 117, 119 (1953).

[12] Ngai repeatedly argues that Du, Mr. Xu, and Mrs. Hsu have waived their right to arbitrate because only HGHK has moved to compel arbitration. See, e.g., Mem. in Opp. at 32 ("Even if they could demand arbitration at this time, the Hsus and Bill Du waived their right to demand arbitration by their obstinate refusal to abide by their Contracts and denial . . . that they are in privity of contract with Ngai."). Du, Mr. Xu, and Mrs. Hsu have not been served, and the Court will not address any
(continued...)

See Pelayo, 2015 WL 9581801, at *12.

## IV. The Copyright Claim (Count VI)

Ngai argues that, no matter the specific circumstances of this dispute, Count VI "would remain subject to judicial decision." [Mem. in Opp. at 35.] Count VI states, *inter alia*:

> Under the terms of Ngai's Architect Contract, as a material term of the contract and as a matter of Copyright Law, the owner does not acquire a license to use and is not entitled to use Ngai's instruments of service, including, without limitation, Ngai's designs, plans, specifications, technical drawings, renderings, 3D videos etc., and other or copyrightable works, in whole or in part, for the Hsu Residence for any purpose whatsoever, unless and until the owner has paid Ngai, in full, for the design fees for said works, which the owner(s) of the Hsu Residence have not done.

[Complaint at ¶ 147.] Other district courts in the Ninth Circuit have concluded that copyright claims are subject to arbitration where an "arbitration clause is broad enough to encompass Lanham Act claims and other intellectual property claims." BioD, LLC v. Amnio Tech, LLC, No. 2:13-cv-1670-HRH, 2014 WL 268575, at *5 (D. Ariz. Jan. 24, 2014) (some citations omitted) (citing Valueselling Assocs., LLC v. Temple, Case No. 11-56229, 2013 WL

---

[12](...continued)
argument regarding waiver of their right to compel arbitration at this time. See, e.g., Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1135 (9th Cir. 2009) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4." (citations and quotations marks omitted)).

17

2350473, at *1 (9th Cir. May 30, 2013)).[13]  Given that Count VI is directly tied to an alleged breach of the Architect Agreement, and given the breadth of the arbitration clause in the Architect Agreement, the Court CONCLUDES that Count VI can be arbitrated.

All of the claims in the Complaint are therefore subject to arbitration, and the Court HEREBY COMPELS arbitration as to Ngai's claims against HGHK and DISMISSES the claims against HGHK.  See, e.g., Lexington Ins. Co. v. Centex Homes, 795 F. Supp. 2d 1084, 1090 (D. Hawai`i 2011) ("A stay, however, is not mandatory and the court may alternatively dismiss those claims that are subject to arbitration." (some citations omitted) (citing Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004))).

## **CONCLUSION**

On the basis of the foregoing, HGHK's Motion to Dismiss and Compel Arbitration, filed December 24, 2015, is HEREBY GRANTED IN PART AND DENIED IN PART.  It is GRANTED insofar as the Court HEREBY COMPELS arbitration as to Ngai's claims against HGHK and DISMISSES the claims against HGHK.  It is DENIED insofar as

---

[13] Moreover, "[u]nder the FFA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'"  Marriott Ownership Resorts, Inc. v. Flynn, Civil No. 14-00372 JMS-RLP, 2014 WL 7076827, at *5 (D. Hawai`i Dec. 11, 2014) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

18

the Court will not make a determination regarding the claims against the unserved Defendants Du, Mr. Xu, Mrs. Hsu, Fan, Hengdian, and HGDA, given the pending Service Motion.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 29, 2016.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**A.K. NGAI, INC. VS. XU YONG'AN, ET AL.; CIVIL 15-00356 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION**